## SIKES *v.* SIKES.

Under the Civil Code (1910), § 2986, where a wife brought suit against her husband for permanent alimony, and the evidence on her behalf tended to show that the husband and wife were living bona fide in a state of separation, and that such separation was caused by cruel treatment on the part of the husband toward the wife, it was error to grant a nonsuit.
                    APRIL 14, 1915.

Action for permanent alimony. Before Judge Cox. Worth superior court. May 14, 1914.

Mrs. Clara O. Sikes brought suit against her husband, B. F. Sikes, for the purpose of obtaining permanent alimony, and pendente lite applied and obtained an order for temporary alimony and attorney's fees. On the trial before a jury, at the close of the plaintiff's evidence the court awarded a nonsuit, and the plaintiff excepted. The other facts will sufficiently appear from the opinion.

*Claude Payton,* for plaintiff.

LUMPKIN, J. (After stating the foregoing facts.) At common law marriage invested the husband with the title to the wife's property and the right to her companionship and earnings. It placed upon him the duty to maintain her suitably, according to his ability and condition in life. No corresponding duty of maintenance was placed upon the wife; and this is still true in this State, even though she may have a separate estate. Out of this obligation

on the part of the husband to support his wife arose the theory of the implied agency of the wife to purchase necessaries, though they might be living separately; and this not being sufficient for the enforcement of the husband's duty in this regard, the doctrine of alimony was a natural consequence of the obligation of the husband toward the wife. By the English practice alimony was not granted as an independent right, but only in connection with some other proceeding, usually divorce. In a number of the United States acts have been passed providing for the grant of alimony, although no divorce may be sought, and in some instances courts of chancery have granted alimony alone without the aid of a statute, on the theory that jurisdiction could thus be exercised in the absence of ecclesiastical courts. In Georgia the power to grant alimony, though no suit for divorce may be pending, is given by statute.

In the absence of express statutory declaration on the subject, the question as to when a wife may have alimony awarded to her if she be living separate from her husband, but no divorce suit has been brought, and when it will be denied her, has given rise to some discussion. Mr. Bishop, after mentioning the different theories of jurisdiction, states this as, in his opinion, the more rational conclusion: "And the rule will be that whenever the wife is justified in living apart from her husband, and she is without means and he is capable of supplying them, but does not, she may have this alimony." 1 Bish. Mar. & Div. (ed. 1891) § 1403. Again he states: "We are free to adopt the rule, which we have seen to be the still better one in reason, that whenever a destitute wife is living apart from her husband, for a cause legally justifying her, he may be compelled, if able, to supply alimony." After quoting from Somerville, J., in Hinds *v.* Hinds, 80 Ala. 225, the statement that the broad ground upon which equitable jurisdiction is made to rest is the unquestionable duty of the husband to support the wife, and the inadequacy of legal remedies to enforce the duty, the author adds: "The necessary result of which proposition is, that whenever the law casts upon the husband the duty to support his wife, and he fails to obey, she may have this alimony suit against him." Id. § 1409. And still further he says: "The husband can not abandon his obligations to his wife; therefore, where in any case the law authorizes her to live apart from him by reason of his ill

conduct, it consequently requires him to maintain her while so living." 2 Id. § 829.

Without discussing further general principles or authorities in other jurisdictions, we will consider the matter in the light of our own codes and statutes. The first code, which took effect on January 1, 1863, was intended to embrace in a condensed form the laws of the State, whether derived from the common law, the constitutions, the statutes of the State, the decisions of the Supreme Court, or the statutes of England of force here. Section 1706 declared, "The husband is bound for necessaries furnished to the wife, when separate from him, subject to the limitations hereinbefore provided. If the wife be living in adultery with another man, the husband is not liable; but notice by the husband shall not relieve him from liability, if his wife is separated from him by reason of his own misconduct; if she voluntarily abandons him without sufficient provocation, notice by the husband shall relieve him of all liability for necessaries furnished to her." This provision is now included in the Civil Code of 1910 as section 2997. Thus, in dealing with that method of compelling the husband to support his wife to the extent of furnishing necessaries, it was recognized that certain conduct on the part of the wife would prevent liability from arising on the part of the husband; and the distinction between the wife's being separated from the husband by reason of his misconduct and a voluntary abandonment of him by the wife without sufficient provocation was also recognized. By section 1689 of the original code (now § 2976) provision was made in regard to applying, at a regular term of court, for temporary alimony where a suit for divorce or for permanent alimony was pending. By section 1693 (now section 2983) it was declared: "Permanent alimony is granted in the following cases: 1. Of divorce, as considered in the former section. 2. In cases of voluntary separation. 3. Where the wife, against her will, is either abandoned or driven off by her husband." Thus the matter stood until 1870. In that year an act was passed which first made certain changes in the law as to granting alimony in connection with divorce cases. By the fourth section, as codified in the Civil Code of 1910, § 2986, it is declared: "When husband and wife are living separately, or are bona fide in a state of separation, and there is no action for divorce pending, the wife may, in behalf of herself and her minor

children, if any, or either, institute a proceeding by petition setting forth fully her case; and upon three days notice to the husband, the judge may hear the same in term or vacation, and grant such order as he might grant were it based on a pending libel for divorce, to be enforced in the same manner," etc. In *Yoemans* v. *Yoemans,* 77 *Ga.* 124 (3 S. E. 354), it was held that an application for the allowance of temporary alimony under this section should be based upon a proceeding for permanent alimony. *Stallings* v. *Stallings,* 127 *Ga.* 464 (56 S. E. 469, 9 L. R. A. (N. S.) 593). It would seem, however, that prayers for permanent and temporary alimony might be included in the same petition. With reference to the effect of the provision of the act of 1870, above cited, and its codification in the Civil Code (1910), § 2986, upon section 2983, which had been in the code prior to the passage of that act, two different views may be advanced. On the one hand, it may be contended that the act of 1870 did not enlarge the three instances stated in the pre-existing section of the code, in which permanent alimony would be granted; that the facts of the present case did not fall within the language of the code as to any of those cases; and therefore that there could be no permanent alimony granted to the wife. On the other hand, it may be contended that the language of the Civil Code (1910), § 2986, derived from the act of 1870, as to when an application for alimony might be made without a suit for divorce, was broad and comprehensive in its terms, and was not limited by a literal construction of section 2983.

In construing these sections of the present code, regard should be had to harmonizing them as far as practicable, remembering at the same time that the act of 1870 was the later expression of the legislative will, and that its effect should not be largely destroyed by placing a narrow and restricted construction on the law as it already existed, and then limiting the effect of the later act by the older law so construed. In *Glass* v. *Wynn,* 76 *Ga.* 319, no divorce proceeding was pending, but the wife applied for permanent and temporary alimony. She alleged that her husband treated her cruelly until she left him. This was denied by the husband. The presiding judge awarded the wife temporary alimony, and the defendant excepted. The judgment was affirmed. Some of the language of Chief Justice Jackson in delivering the opinion might indicate that he thought that the fact that the husband and wife

were in a bona fide state of separation furnished a sufficient basis for the grant of temporary alimony, and that it was immaterial what brought about the separation. But in other parts of the opinion he stated that the evidence was in conflict as to what caused the separation, and that, if cruel treatment or voluntary separation were necessary in order to authorize the proceeding, cruelty was sufficiently shown. That case does not establish as an inviolable rule that the mere fact of separation (not mutually voluntary), regardless of its cause or the surrounding circumstances, will give to the wife a right to alimony. But, on the other hand, it does establish the rule that if the wife leaves the husband because of his cruel treatment toward her, this does not prevent her from obtaining alimony. That case has been fully discussed in *Coley* v. *Coley*, 128 *Ga.* 654, 658 (58 S. E. 205). On the subject of what constitutes cruel treatment it was cited in *Ray* v. *Ray*, 106 *Ga.* 260, 263 (32 S. E. 91), and criticised in *Ring* v. *Ring*, 118 *Ga.* 183 (44 S. E. 861, 62 L. R. A. 878).

In *Vinson* v. *Vinson*, 94 *Ga.* 492 (19 S. E. 898), voluntary abandonment of the husband by the wife without cause, together with certain other circumstances, was held to be sufficient to make it error on the part of the judge of the superior court to award temporary alimony. In that case it did not appear that any divorce suit was pending. In *Williams* v. *Williams*, 114 *Ga.* 772 (40 S. E. 782), alimony was applied for pending a divorce suit. It was held that where the uncontradicted evidence showed that the separation between the husband and wife was caused solely by the adultery of the latter, uncondoned by the former, it was an abuse of discretion to allow the wife temporary alimony. In *Parker* v. *Parker*, 134 *Ga.* 316 (67 S. E. 812), an action was brought by a wife against her husband for permanent alimony. On the trial, the defendant requested the court to charge the jury that if they believed from the evidence that the wife left her husband without cause, they would not be authorized to find any alimony for the plaintiff; and that "when I say and use in this connection the word 'cause,' I mean some unlawful act or unlawful doing." It was held that there was no error in refusing such request, the reason assigned being that "the wife is not barred of her right to alimony simply because the conduct of the husband causing her to refuse to live with him did not consist of acts which were unlawful." In refer-

ence to the grant of temporary alimony pending a suit for permanent alimony, where there is no action for divorce, the Civil Code (1910), § 2986, provides that the judge may "grant such order as he might grant were it based on a pending libel for divorce," thus analogizing the grant or refusal of temporary alimony in the two classes of cases.

Looking at the provisions of the different sections of the code touching the duty of the husband to support the wife, and the methods of enforcing that duty if he fails to perform it, and construing the law so as to have a harmonious intent, we see that, if the husband and wife are separated, he is generally bound to furnish her necessaries, but that there are limitations upon this duty, and circumstances which will relieve him from liability to one who furnishes them, such as adultery by the wife, or voluntary abandonment of the husband by her without sufficient provocation, together with notice of his refusal to furnish necessaries. We further find that the old rule of granting temporary alimony in divorce cases almost as a matter of course has been considerably modified by the change in the law as to the property and rights of married women; and that even the discretion of the judge in granting it may be declared to have been improperly used, under certain circumstances. The act of 1870 must be given a fair construction in its provision as to the granting of alimony where no divorce suit is pending. It was not intended to give an absolute right to the wife to obtain alimony in all cases of separation from her husband, regardless of the cause of the separation or of her own conduct. The trenchant statement of Judge McCay, "that suits for divorce and alimony ought not to be encouraged" (*Hill* v. *Hill*, 47 *Ga.* 333), may well be borne in mind, if a wife deserts her husband without sufficient provocation. While this is true, on the trial before the jury the presiding judge can not grant a nonsuit because he would not allow a verdict for the plaintiff to stand. He can only do so if the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover. Otherwise, he should submit the case to the jury, under proper instructions. Civil Code (1910), § 5942. In the present case some of the testimony dealt with trivial bickerings and incivilities which would furnish no legitimate ground either for a separation or for the granting of a divorce.

Apparently an unfortunately too common complication arose from the marriage of a widower with children by a former marriage, and with a fair amount of property, to a widow with children by a former marriage, and with less property. Nevertheless the plaintiff did allege cruel treatment producing danger to health, including a false charge of infidelity, followed by her separation from her husband. Her evidence tended to support these allegations. It was for the jury, not the court, to pass upon its credibility. While some of her testimony failed to show facts which would have authorized a separation, there was enough to require the submission of the case to a jury.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*